191 N.J. Super. 73 (1983)
465 A.2d 558
NANC E. FELLERMAN, PLAINTIFF,
v.
FRANCIS J. BRADLEY, JR., DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided May 16, 1983.
*75 Paula L. Crane, for plaintiff. (Anne W. Elwell, attorney).
Ralph A. Ferro, for defendant. (Ferro, Lamb & Kern, attorneys).
KRAFTE, J.J.D.R.C., (temporarily assigned).
The question presented in this matter is: In a post-judgment contest, do the attorney-client privilege and disciplinary rules, specifically DR. 4-101, preclude an attorney from revealing the whereabouts of his client when that client has instructed his attorney to keep this information confidential?
To fully understand the context within which this issue arises, a recitation of the background is necessary. On February 24, 1982, during the pendency of this action, the court appointed Seymour Rubin, C.P.A., to make examinations and render opinions as to defendant's financial matters. The initial cost of these services was to be borne by defendant, with allocation to await the final hearing. On April 20, 1982, this same expert was directed to examine plaintiff's financial affairs and to render a report.
*76 Thereafter, in May or June, Mr. Rubin contacted defendant's then counsel, Edward S. Zizmor, as the retainer remained unpaid. Zizmor informed him that defendant moved out of state and that he did not know his whereabouts. On July 14, 1982 Ralph Ferro, defendant's present counsel, was substituted. In spite of not having received a retainer, Rubin completed his work as per his appointment and submitted his bill to Ferro on July 19, 1982. By October 8, 1982, the bill remained unpaid and the court directed Ferro to produce his client before this court. Ferro countered that his client was out of state and would not be available. Nevertheless, the plaintiff, her counsel, and defendant's counsel appeared in court on November 1, 1982, the trial date, before another judge, and placed an oral property settlement on the record incorporating it into the final judgment, after defendant's counsel telephonically conferred with and obtained the full approval of defendant. One of the issues specifically resolved was the now long-standing bill of Mr. Rubin with defendant agreeing to pay his total fee of $375. On November 15, 1982 this court once again wrote to Ferro concerning his client's failure to pay the expert's fee. Ferro responded: "... Mr. Bradley does not reside within the State of New Jersey. Although I have his address, the address was given to me in confidence by a client and I cannot disclose that address unless so ordered by the New Jersey Supreme Court. I am not attempting to be uncooperative, but I must observe the confidentiality of the lawyer-client relationship." In later correspondence Mr. Ferro specifically relied on DR. 4-101.
On May 2, 1983 the court on its own motions issued an order to show cause why the attorney should not be held in contempt for failure to disclose his client's address. On the return date, Ferro argued that to compel him to disclose his client's whereabouts would violate the attorney-client privilege and, further, that in any event, a court-appointed expert whose fee is unpaid should not enjoy a status higher than any other creditor. With respect to this latter point, this court expressly rejects that argument. On the contrary, for reasons more fully stated *77 hereinafter, this court finds an absolute necessity to afford such protection.
With regard to the attorney-client privilege, this court has surveyed the applicable case law and it appears that no New Jersey case has addressed this particular issue: that is, can a court in an effort to enforce its judgment or order, compel an attorney to disclose his client's address when the client has directed the attorney to keep that information confidential? That question is answered affirmatively.
The power of this court to institute civil proceedings for contempt is recognized by N.J.S.A. 2A:10-1 et seq. and found in R. 1:10-5, "Relief to Litigant." Further, "all superior courts of record, civil and criminal, possess inherently and independently of statutory authority, the power to punish." In re Merrill, 88 N.J. Eq. 261, 267 (Perog. 1917). The within proceeding is on a civil, rather than criminal contempt. Consequently, the order for which coercive measures are sought to induce compliance must itself be valid. See In re Carton, 48 N.J. 9, 25 (1966). This court is satisfied that its order appointing an accountant and compelling payment of his fee was indeed valid.
In general, the power of a court to appoint an accountant and award fees against a party in a general equity matter is a recognized practice within the broad discretion of the Court of Chancery, Anzalone v. Anzalone Brothers, Inc., 185 N.J. Super. 481, 489 (App.Div. 1982), but perhaps nowhere is this practice more often employed than in matrimonial litigation.
Rothman v. Rothman, 65 N.J. 219 (1974), mandates that the matrimonial judge determine each asset's value for the purpose of equitable distribution and that an accountant will sometimes be needed to achieve that purpose. The use of a court-appointed expert accomplishes that stated purpose and does so more efficiently than if each party employed their own. On behalf of the court, he garners the assets and objectively evaluates them. He is not considered anyone's "hired gun" and so disputes regarding his methodology or data base are typically *78 few in number and easily resolved to everyone's satisfaction. In fact, his unique position has been shown to be significant in prompting settlement. Family Advocate (ABA Family Law Section, vol. 4, No. 3, Winter 1982, page 12). The over-all effect is that the costs to litigants are minimized, preserving more of the marital estate, and the likelihood of a negotiated accord is maximized, thereby greatly reducing trial time.
These are precisely the concerns which motivated the court pending resolution of this matter. The court appointed an experienced, forensic certified public accountant as its own expert and charged him with the responsibility of examining the financial books and records, both personal and business, of both parties, with the goal of presenting to this court a full, complete and accurate report and analysis of the nature, extent and value of assets, income and cash flow on the date of marriage and date of filing of the complaint.
The expert was to function as an arm of this court, accountable not to counsel, but directly to the court.
Based on the affidavits submitted by the parties within their pendente lite applications, it was this court's opinion that there might well exist a substantial amount of property for distribution, that the settlement climate was nil and that the use of private accountants would merely serve to prolong or hinder financial discovery.[1] The accountant's very success confirms the appropriateness of his appointment; the case was settled. Moreover, it bespeaks the absolute necessity of protecting his interests and that of others in his position in order that they be available to courts in the future. The obstacle which stands to *79 impede this court's efforts in that regard is the assertion of the attorney-client privilege.
The question of whether a client's whereabouts is disclosable has been addressed in other jurisdictions but with conflicting results. (See cases collected under 114 A.L.R. 1328 and 16 A.L.R.3d 1062).
The whereabouts of a client was ordered disclosed to facilitate an award of counsel fees in O'Connor v. O'Connor, 62 Misc. 53, 115 N.Y.S. 965 (Sup. 1909), the court noting that "they (attorneys) should be required to disclose the same (whereabouts), when it appears that the sole object in seeking the information is in connection with the pending litigation." Id. at 965. Similarly, an address was held not "essential to the attorney's counsel or advice" but rather "collateral to the subject of the attorney's professional employment." Richards v. Richards, 64 Misc. 285, 119 N.Y.S. 81, 82 (Sup. 1909). Continuing in this line of reasoning is the case of Falkenhainer v. Falkenhainer, 198 Misc. 29, 97 N.Y.S.2d 467 (Sup.Ct. 1950) wherein it states "the communication must be one essentially confidential and relate to the subject-matter upon which the attorney's advice was given or must be sought." Id. 468.
Several other cases involving the whereabouts of clients who have absconded with their children pending custody determinations have also considered this point. In Jafarian-Kerman v. Jafarian-Kerman, 424 S.W.2d 333 (Mo. App. 1967), the father fled to Germany with the children prior to final resolution of the divorce suit. The court found the privilege inapplicable as a recognized exception on those facts. "It has no reference to communications by a client to his attorney in furtherance of a crime or fraud." Id. at 339.
Given a similar situation and in harmony with that result, a New York court wrote, "an attorney's duty to his client is limited to rendering such legal assistance and advice as is required to most effectively pursue their cause within the bounds of the law. It cannot extend to aiding and abetting the client to evade the impact of the orders of the court either by *80 acts of commission or omission." In re Jacqueline F., 94 Misc.2d 96, 404 N.Y.S.2d 790, 795 (1978). The Supreme Court of Washington went even further and placed an affirmative duty on the court to seek the whereabouts of a litigant to enforce compliance with its order once the court learns of the party's violation of the pendente lite custody order. The court said: "we will not allow the shield of silence constructed by the [attorney-client] privilege to aid the client in continuing his wrongdoing at the expense of other members of society." Dike v. Dike, 75 Wash.2d 1, 448 P.2d 490, 498 (Sup.Ct. 1968). However, notwithstanding the foregoing, a recent Pennsylvania case reached a contrary result when a father removed his children, who were the subjects of a custody dispute, to Florida: That court said, "it is well settled that where the client's address is communicated in his professional capacity, the information is generally privileged. [citation omitted]." Brennan v. Brennan, 281 Pa.Super. 362, 422 A.2d 510, 516 (Sup.Ct. 1980).
Our own Supreme Court has treated the question of attorney-client privilege on numerous occasions in varying contexts.
While all these cases are instructive, no one case neatly fits the scenario before this court. Furthermore, this court would be remiss in giving perfunctory treatment to this ancient common law rule by artificially distinguishing "address" from "communication". Rather, the direction to be gleaned from the case law is that any inflexible rule is unworkable and will not be able to serve the competing interests involved. Mahoney v. Mahoney, 91 N.J. 488 (1982). The problem must be given careful analysis being ever sensitive to the issues raised to reach the proper accommodation.[2]
The applicability of the privilege, once raised, is a question to be determined by the court. Robinson v. U.S., 144 F.2d *81 392, 405 (6 Cir.1944), aff'd 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945). The applicable substantive law is embodied in Rule 26 of the New Jersey Rules of Evidence, which essentially codified the common law privilege, subject to certain exceptions. Included in the exceptions is "a communication in the course of legal service sought or obtained in aid of the commission of a crime or fraud." N.J.S.A. 2A:84A-20(2). Further guidance is found in DR. 4-101(B)(1) which reads:
Except as permitted by DR. 4-101(c), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client. The applicable exception found in DR. 4-101(c) is subsection 2 which reads:
Confidences or secrets when permitted under Disciplinary Rules or required by law or court order. [Emphasis supplied]
In order for the confidence or secret to be properly disclosed, the attorney-client privilege must be no bar.
Initially the proper prerequisites of the privilege must exist to consider its application; that is, that a client had sought legal advice from an attorney in his capacity as such and that the communication relating to that purpose is offered in confidence. In re Kozlov, 156 N.J. Super. 316 (App.Div. 1978), rev'd. on other grounds (79 N.J. 232 [1979]). The court is satisfied that these requirements are met here, i.e., that the address was given to the attorney in confidence during the attorney-client relationship. Thus, the question becomes whether the confidence offered can be disclosed as within the exception stated above.
In deciding that issue the court must be ever mindful of the objective of the attorney-client privilege. The ancient purpose was based upon consideration of the oath and honor of the attorney but today the focus is on the client. It rests upon a policy in favor of "affording to the client freedom from apprehension in consulting his legal adviser." [citation omitted]. State v. Toscano, 13 N.J. 418, 424 (1953). That policy is no more aptly stated than in the following excerpt:
The essential policy of the privilege is grounded in the subjective consideration of the client's freedom from apprehension in consulting his legal advisor, assured by removing the risk of disclosure by the attorney even at the hands of the law, Wigmore, Evidence (3d Ed. 1940), section 2291. Lord Eldon said that what at the *82 outset was regarded as the attorney's privilege came to be "the privilege of the client and the public." Wright v. Mayor, 6 Ves.Jr. 281 (1801). The individual interest outweighs the public concern in the search for truth. The foundation of the rule is "out of regard to the interests of justice, which cannot be upholden, and to the administration of justice, which cannot go on without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations which form the subject of all judicial proceedings." Greenough v. Gaskill, 1 Myl. & K. 98, 103 (1833). Without secrecy of communication there cannot be the "unrestricted and unbounded confidence in the professional agent" which is essential to the administration of justice. Anderson v. Bank L.R. 2 Ch.D. 644, 649 (Jessel, M.R. 1876). The privilege is vain if it does not secure freedom of professional consultation. Unless the confidence be inviolate, there will of necessity be restraints upon communication working grievous injury and injustice. The solemn obligation of secrecy is inherent in the essential right to counsel. [State v. Kociolek, 23 N.J. 400, 415-416]
This reading would appear to require a finding that the intent of the client was to further commission of some crime or fraud, or, at the very least, that neither the constitutional rights against self-incrimination and the right to prepare a defense nor some bona fide purpose of the privilege would be served by upholding it. See In re Selser, 15 N.J. 393 (1954).
This court finds that defendant herein did not, by his actions, intend to commit a crime or fraud. Rather, his intent was calculated to frustrate the judgment and order of this court. However, the court must also consider whether application of the privilege does not safeguard the client's rights within the contemplation of the rule. Consequently, it becomes important to consider what this matter is not about. This is not a case where a client has surreptitiously removed a child pending a custody suit to an unknown jurisdiction. In such a case, a disclosure of the client's whereabouts would certainly put him at peril and jeopardize his privilege against self-incrimination. See Maness v. Meyer, 419 U.S. 449, 458-463, 95 S.Ct. 584, 590-591, 593, 42 L.Ed.2d 574 (1975). While the equities in such a case must surely favor disclosure, the counterweight of constitutional constraint is heavy. Nor is this a case where disclosure threatens an "individual's interest in freedom from apprehension while consulting his legal advisor", State v. Melvins, 155 N.J. Super. 316, 322 (App.Div. 1978), as the information sought on these facts is not within the advice and counsel of the attorney. These *83 constitutional concerns which ensure our very legal system are conspicuously absent here.
This is not to say that only a constitutional right is protected by the privilege or that the burden to establish the privilege is upon the party seeking its protection, but rather, that this is a determination which must consider the purpose for which the rule is intended and the intendment of the person who asserts it. Thus, the privilege was properly granted to a woman who requested confidentiality of her address as she feared harassment from her ex-husband. Taylor v. Taylor, 45 Ill. App.3d 352, 3 Ill.Dec. 961, 359 N.E.2d 820 (1977). Although no constitutional issue was there presented, the disclosure certainly would have threatened her freedom from apprehension in consulting her lawyer without a counter-benefit to any other bona fide concern. None of the aforementioned considerations appear in the case at bar.
As to the attorney, he is ethically bound to assert the privilege on his client's behalf. He is likewise responsible to the courts, to the profession and to the public. In re Genser, 15 N.J. 600 (1954). He has an "obligation of being candid and fair with the court," In re Turner, 83 N.J. 536, 539 (1980) and when "the proper administration of justice so requires, to disclose all pertinent and relevant facts to the court so that it may act fairly." Id. at 539.
The request by defendant that his address remain confidential was offered within the confines of the attorney-client relationship with the expectation, or perhaps hope, that the privilege would keep this information beyond the power of this Court. However, this court is satisfied that to grant the privilege on these facts would not serve any of its purposes and would do violence to the principles and ideals it is intended to further. The court cannot find, and counsel has not offered any right of the client which is protected or advanced by application of the rule. On the other hand, it clearly appears that failure to disclose the information frustrates enforcement of the judgment of the court, the voluntary settlement of the parties, and the *84 obligation which the defendant voluntarily assumed to the court-appointed expert. As Justice Cardozo eloquently observed:
There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. [Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993, 1000 (1933)]
That abuse is here apparent and will not be permitted to remain. Having determined that the appointment of an accountant was necessary, having appointed the accountant, the case having settled through his intervention, defendant having consented to being responsible for his charges, defendant having removed from the State of New Jersey, and defendant having instructed his attorney not to disclose his address to prevent enforcement of his payment responsibilities, defendant's attorney now invokes the attorney-client privilege as set forth in DR. 4-101.
This court cannot sanction the frustration of its order (in this case a consent order) by permitting a post-judgment invocation of the attorney-client privilege to unduly interfere with and restrict the proper administration of justice which it is entrusted to foster. The attorney-client privilege does not prevent this attorney from revealing his client's address. The attorney is directed to reveal same within seven days.
NOTES
[1] In addition to Rothman, authority for court-appointed experts can be found in the Phase Two, Final Report of the New Jersey Supreme Court Committee on Matrimonial Litigation, (Pashman Report), Supp. to New Jersey Law Journal, July 16, 1981, where it was stated that "... the court-appointed expert can be immeasurable value ..." Id. at 5. Also, see Mayer v. Mayer, 180 N.J. Super. 164, 169 (App.Div. 1981) where the use of a court-appointed expert is endorsed.
[2] The question of whether the identity of a client is within the attorney/client privilege was presented in In Re Kozlov, 79 N.J. 232 (1979). The court rejected a per se rule and instead balanced the competing interests, in a unique fact pattern, and sustained the privilege. Id. at 240-241.