RASHAN WILLIAMS, an Infant, by His Father and Natural Guardian, NICHOLAS WILLIAMS, et al., Respondents, v ROOSEVELT HOSPITAL et al., Appellants, et al., Defendants.

First Department, April 16, 1985

## APPEARANCES OF COUNSEL

*Howard R. Cohen* of counsel (*Bower & Gardner,* attorneys), for appellants.

*Jay F. Meisenberg* of counsel (*Pegalis & Wachsman, P. C.,* attorneys), for respondents.

### OPINION OF THE COURT

KUPFERMAN, J. P.

Plaintiffs, an infant and his father, brought this medical malpractice action alleging that due to the defendants' obstetrical management of the labor and delivery, the infant plaintiff suffered brain damage and an injury which resulted in a palsy of his upper right extremity and hand.

Plaintiffs produced the mother as a nonparty witness for examination. Defendant's counsel was able to elicit the fact that the mother had two previous children. However, when counsel tried to determine whether either of them had any physical or congenital problems, plaintiff's counsel objected, claiming a privilege. After defense counsel had further determined that the mother had also had an abortion, plaintiff's counsel objected to

any questioning relative to the mother's medical history. Defendants' motion for a further examination of the mother was denied. We reverse.

CPLR 3101 (a) requires full disclosure and is designed to promote liberal discovery. It is tempered by CPLR 3101 (b), which states that upon objection, privileged matter will not be obtainable. CPLR 4504 (a) provides a privilege for information given by a patient to a doctor for professional purposes, in confidence. Plaintiffs combine CPLR 3101 (b) with 4504 (a) for the proposition that the infant plaintiff's mother is privileged from testifying about her medical history, or the medical history of her two other children. As authority, the plaintiffs cite the Second Department case of *Hughson v St. Francis Hosp.* (93 AD2d 491).

In *Hughson* (*supra*), the Second Department allowed the infant plaintiff's nonparty mother to assert a privilege and refuse to testify about her own or her other children's medical history. However, the court held that if the mother asserted this privilege, the infant plaintiff would be precluded from introducing any of this evidence at trial.

This situation should first be distinguished from *Mullarkey v Misericordia Hosp. Med. Center* (104 AD2d 1064). That case sought written authorization for the mother's past medical history and medical records of the infant plaintiff's siblings. In that respect it was similar to *Burgos v Flower & Fifth Ave. Hosp.* (108 Misc 2d 225). Those defendants also wanted the medical records of an infant plaintiff, his siblings and his mother. In both of those cases, the defendants were seeking records, as opposed to witness testimony at an examination, which is at issue here. It is possible that records could contain information furnished to the physician in confidence. Thus, those documents could be privileged.

*Hughson* states *"She* [the infant plaintiff's mother] is not a party to this lawsuit, and *she* has not put in issue her physical condition, medical history or family history" (93 AD2d, at p 500; emphasis in original). Nonetheless, the mother must necessarily put her medical history in issue. The *Hughson* court recognized the necessity of the mother testifying about her condition during the time the infant plaintiff was *in utero*. However, the mother's medical history neither begins nor ends at the infant plaintiff's birth. The mother's past medical history is relevant.

The court here at Special Term, while indicating its conclusion that disclosure should be permitted felt constrained to follow the *Hughson* result. In our view, there is no privilege in

testimony as to what actually happened. The privilege applies to confidential information given to the physician which enables him to act in his professional capacity. (CPLR 4504 [a].) To the extent that the *Hughson* decision is to the contrary, we do not follow it.

Accordingly, the order of the Supreme Court, New York County (Gammerman, J.), entered on February 24, 1984, denying the defendants' motion for a further examination before trial of the nonparty witness, Mrs. Marian Williams, should be reversed, on the law, without costs, the motion granted, and the examination of Mrs. Williams permitted provided that notice by the defendants is given to the witness not less than 30 days from the date of such examination, or at such time and place as the parties may agree.

CARRO, J. (dissenting). Under constraint of our most recent decision on the instant subject, *Mullarkey v Misericordia Hosp. Med. Center* (104 AD2d 1064), and the Court of Appeals decision of *Matter of Grand Jury Investigation of Onondaga County* (59 NY2d 130, 135-136) which unequivocally states that exceptions to the physician-patient privilege are for the Legislature to enact, I would affirm the order below and, accordingly, dissent.

Plaintiffs, Rashan Williams, an infant, and his father, as natural guardian, brought this action for damages allegedly resulting from the obstetrical mismanagement of the labor and delivery and aftercare rendered to the infant plaintiff. The infant has brain damage, resulting in brain dysfunction and retardation, and palsy of the upper right extremity and hand. On June 29, 1983, plaintiffs produced the mother, Marian Williams, for pretrial examination as a nonparty witness, at which time defense counsel learned of her two other children, born previous to the infant plaintiff. When defense counsel attempted to question the mother as to any congenital or other physical problem of these older children, plaintiff's counsel objected on the ground that the medical history of the infant plaintiff's siblings was privileged. Counsel also objected to any questioning of the mother's medical history, except for the period of time when infant plaintiff was *in utero*.

Thereafter, by notice of motion, counsel for defendant moved for an order directing that Marian Williams appear for further examination to answer questions pertaining to her prior medical history and the medical and physical condition of infant plaintiff's siblings. While disagreeing with the fairness of the result in *Hughson v St. Francis Hosp.* (93 AD2d 491), a case on all fours with the instant one, Special Term was nevertheless constrained

by *Hughson* to deny the motion on the ground that the information sought was protected by the physician-patient privilege. In the face of overwhelming case law, all of which upholds the privilege in identical fact situations, I would affirm Special Term's order.

CPLR 3101 (a), which provides for full disclosure of all evidence material and relevant to a prosecution or defense, is expressly limited by CPLR 3101 (b), which states that upon objection of a party, privileged matter is nondiscoverable. The physician-patient privilege, a creature of statute, is found in CPLR 4504 (a). It provides a privilege for any information confidentially acquired by a physician in attending a patient in a professional capacity. The purpose underlying the privilege is to foster full disclosure by the patient to his doctor so as to ensure proper diagnosis and treatment. (*Matter of Grand Jury Proceedings* [*Doe*], 56 NY2d 348, 352.)

In interpreting the scope and application of a statutorily created privilege it is an oft-stated principle that the statute creating a privilege must be given a broad and liberal construction in favor of the protection of confidential communications, while a statute waiving or suspending the privilege must be "strictly construed and confined to the specific exception created by it". (*Matter of Investigation of Criminal Abortions,* 286 App Div 270, 274, *lv denied* 309 NY 1031.) More to the point, the Court of Appeals recently explicitly rejected the notion that judicial exceptions to the privilege can be created. In *Matter of Grand Jury Investigation of Onondaga County* (59 NY2d 130), the court adamantly refused to carve an exception to the privilege so as to permit the District Attorney to require a hospital to divulge the names and addresses of those treated for stab or knife wounds during a particular time period, despite the State's argument that the important public interest in investigating homicides overrode the need for the privilege (*supra,* at pp 135-136). The court noted that the District Attorney could point to no "explicit declaration of legislative intention to permit the privilege to be overridden" (*supra,* at p 135). After citing the many instances when the legislature did enact exceptions to the privilege, the court further stated that "[t]hose exceptions to the privilege make clear the legislative concept that exceptions to the statutorily enacted physician-patient privilege are for the Legislature to declare" (*supra,* at p 136). Lower court decisions creating exceptions to the physician-patient privilege, e.g., *Matter of Allen* (*Mauceli*) (24 Misc 2d 763); *People ex rel. Chitty v Fitzgerald* (40 Misc 2d 966), are, therefore, of questionable

authority in light of the more recent *Matter of Grand Jury Investigation of Onondaga County (supra)* Court of Appeals case.

Admittedly, the Court of Appeals has on very limited occasions interpreted the privilege as simply not applying in certain instances. Thus, in *Matter of Grand Jury Proceedings (Doe)* (56 NY2d 348, *supra*), the court held that when a hospital is under investigation for possible crimes against its patients, it may not assert the physician-patient privilege in opposition to a Grand Jury subpoena calling for those patients' hospital records (*supra,* at p 351). The court determined "that the purpose of the privilege is to protect the patient, not to shield the criminal" (*supra,* at p 353). It can, moreover, be presumed that in such an instance, the patient would waive the privilege. Additionally, in a criminal prosecution, the victim's privilege cannot be used to exclude evidence relevant to disprove the guilt of the accused, for such would violate due process. (*People v Preston,* 13 Misc 2d 802, 814.) But, these holdings are hardly applicable to the case at bar, where no criminal charges are under investigation.

The Court of Appeals has also found that a waiver of the privilege occurs when a party affirmatively places his or her own physical or mental condition in issue. (*Koump v Smith,* 25 NY2d 287.) The *Koump* decision has been interpreted as requiring disclosure when (1) the party seeking disclosure shows that the mental or physical condition of another party is in controversy, and (2) the person whose mental or physical condition is in controversy waives the privilege by himself placing the issue in controversy. (3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3121.01.) When one party seeks disclosure by another party, he must, moreover, prove that the physical or mental condition is in controversy by more than making mere conclusory allegations. Rather, he must show that the issue is in controversy through affidavits containing evidentiary matter and made by a person having knowledge of the facts. (*Koump v Smith,* 25 NY2d, at pp 299-300.) Addressed, as it is, to the situation where a party affirmatively places his physical or mental condition in issue, *Koump* does not answer the problem posed here: whether a nonparty is protected by the physician-patient privilege from divulging her and her children's medical history where such evidence is not affirmatively placed in issue, and is not necessary to the plaintiff's case, but may be potentially relevant to the defense.

Plaintiffs readily concede that because infant plaintiff's injuries are at issue and allegedly occurred during the labor and delivery and after-birth care rendered him, the privilege is

waived as to the infant's medical history and that of the mother during the *in utero* period. This is the *Koump (supra)* waiver situation. However, requiring disclosure of privileged matter beyond this time period and of anyone not a party to the action goes beyond the waiver theory of *Koump* and delves dangerously into the area of judicially created exceptions explicitly forbidden us by the Court of Appeals decision in *Matter of Grand Jury Investigation of Onondaga County (supra)*.

While the information may be relevant for the defense to determine whether infant plaintiff's injuries are congenital rather than the result of malpractice, the defense has not produced even an iota of evidence to suggest that the injuries may indeed be congenital in origin. In fact, the record reveals that infant plaintiff's sister Melinda was a high school graduate, who earned "A" grades, and was then in the military service in communications. The infant's brother, Sedrick, who for many years had behavioral problems in school, was then serving a prison sentence for a felony conviction. The threshold requirements have not, therefore, been met so as to conclude a waiver in this case. Furthermore, this and other courts have already considered this very issue in identical factual settings and have found that the privilege does apply and no waiver occurs. The majority's attempt today to distinguish these cases is unpersuasive and merely amounts to their creation of an exception to the privilege without any legislative authorization to do so.

The case most often cited on this issue is the Second Department case of *Hughson v St. Francis Hosp.* (93 AD2d 491, *supra*). There the court refused to find that the infant plaintiff's mother, a nonparty witness, had waived her right not to disclose, either through testimony or the production of records, her and her other children's medical history, except for the period when plaintiff was *in utero*. The defendants had argued that the mother's medical and genetic history was in question and, as here, suggested the possibility that the infant's injuries could have been congenital rather than the result of medical negligence. Recognizing the conflict between the importance of full disclosure and the existence of the privilege, the *Hughson* court permitted the mother to assert her privilege, except for the *in utero* period, but precluded her from introducing at trial any evidence concerning the privileged information, should she decide to rely on the privilege (*supra,* at p 502).

This court, in another similar case, *Mullarkey v Misericordia Hosp. Med. Center* (104 AD2d 1064), also upheld a nonparty's medical privilege and affirmed an order denying defendants'

motion seeking authorization to obtain the medical records of the infant plaintiff's mother during the non-*utero* period, as well as the records of infant plaintiff's older siblings. That was also an action involving malpractice during delivery of the infant. In *Mullarkey,* the mother was even a nominal party to the action, since she brought suit on the infant's behalf as natural guardian. Special Term found that the only waiver of the privilege was as to the period of time when infant plaintiff was *in utero,* but otherwise the information sought was subject to the privilege. In *Mullarkey* defendant hospital cross-moved for an order to direct the testimony of the physicians who had treated the infant's mother and siblings. Special Term denied the cross motion in the same order as the one on appeal, but defendant hospital did not appeal. This court affirmed, without opinion.

In accord with these cases are *Burgos v Flower & Fifth Ave. Hosp.* (108 Misc 2d 225, 226 [barring defendants from obtaining the prior medical records of the mother and the medical records of infant plaintiff's siblings]) and *Rubino v Albany Med. Center* (126 Misc 2d 204, 207 [on the basis of *Hughson* (*supra*) and *Burgos* (*supra*) the court permitted plaintiff's mother to assert her medical privilege and decline to answer questions as to her previous medical history]).

The majority today intends to circumvent the holdings in all of these cases by making the argument that medical records which "could contain information to the physician in confidence" are privileged but not testimony, since "there is no privilege in testimony as to what actually happened". In the context of this case the majority presumably means that testimony as to "what actually happened" during the mother's prior pregnancies and as to the physical condition of her children is not protected by the privilege. To the extent that the Second Department in *Hughson* (*supra*) interprets the privilege as also applying to testimony, the majority declines to follow its holding. Such an interpretation of the scope of the privilege is indefensible since it has no support in case law and would render the privilege a meaningless and empty legislative enactment, the purpose of which would be easily thwarted by a party demanding testimony as to what occurred rather than medical records.

The Court of Appeals has defined the scope of the privilege as including "not only communications received from the lips of the patient but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observations of his appearance and symptoms." (*Edington v Mutual Life Ins. Co.,* 67 NY 185, 194.) It covers any

information acquired in attending a patient in a professional capacity and which is necessary to enable the doctor to act in that capacity. (*Klein v Prudential Ins. Co.,* 221 NY 449, 453.) Even information acquired by a physician as a necessary incident to his treatment of an unrelated condition is privileged. (*Nelson v Village of Oneida,* 156 NY 219.)

Inquiry may not be made of a patient or of his hospital records to establish the character or existence of a disease or ailment, for such is as privileged as the testimony of the physician making the diagnosis. (*Lorde v Guardian Life Ins. Co.,* 252 App Div 646.) In short, "[t]he form in which the statements are sought to be introduced is of no consequence, whether as a witness on the stand or through the medium of an affidavit or certificate. All are equally under the ban of the statute." (*Davis v Supreme Lodge, Knights of Honor,* 165 NY 159, 163 [1900].)

The only items excepted from the privilege are those pertaining to "ordinary incidents and facts as are plain to the observation of any one without expert or professional knowledge". (*Klein v Prudential Ins. Co.,* 221 NY, at p 453; *see also, People v Newman,* 32 NY2d 379, 383.) This has generally been interpreted to include such inconsequential matters as the dates and fact that a physician attended a patient, that the patient was ill, and what fees were paid (*Patten v United Life & Acc. Ins. Assn.,* 133 NY 450, 453) or the ordinary detection of a person's intoxicated state (*People v Hedges,* 98 AD2d 950). However, an attempt to elicit the nature of a patient's disease or ailment, whether through documentary evidence or testimony, is forbidden by the privilege. (*Lorde v Guardian Life Ins. Co.,* 252 App Div, at p 649.)

The majority, therefore, seriously departs from the overwhelming case law when it states that testimony as to what occurred is not privileged. It is impossible for infant plaintiff's mother to discuss her prior pregnancies, which are certainly medical conditions, and the physical and mental condition of her children without divulging information she has shared in confidence with her or her children's physicians, in order to receive proper treatment and diagnosis. It is the substance of the privilege which is protected; the form in which it is presented is immaterial.

It is my opinion that the order appealed from herein should be affirmed.

Ross and BLOOM, JJ., concur with KUPFERMAN, J. P.; CARRO, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on February 24, 1984, reversed, on the law, without costs and without disbursements, the motion granted, and the examination of Mrs. Williams permitted provided that notice by the defendants is given to the witness not less than 30 days from the date of such examination, or at such time and place as the parties may agree.