HELEN ZIRINSKY, Respondent, v LAWRENCE ZIRINSKY, Appellant.

First Department, June 9, 1988

**APPEARANCES OF COUNSEL**

*Myrna Felder* of counsel *(Jeanne Wilmot Carter* with her on the brief; *Raoul Lionel Felder, P. C.,* attorney), for respondent.

*William C. Herman* of counsel (*Allan D. Mantel* and *Frederic J. Siegel* with him on the brief; *Rosenthal, Herman & Mantel, P. C.,* attorneys), for appellant.

## OPINION OF THE COURT

SULLIVAN, J. P.

This appeal presents the issue of whether a court has the power in a matrimonial action to appoint an independent appraiser to value marital property and to apportion the appraiser's fees between the parties. We hold that it does and, accordingly, affirm the order appealed.

The parties have been married for over 43 years and are the parents of four adult children. The husband is a real estate developer and investor with substantial holdings throughout New Jersey and Florida. His personal worth has been estimated by one source at $300,000,000. All of the assets were acquired during the marriage and are thus, by definition, presumed to be marital property. The husband has filed a 62-page financial statement showing a net worth of $10,943,520 as of December 31, 1986. As is obvious from a review of this document, the husband has extremely complex and substantial interests in over 30 partnerships and "S" corporations. In an unaudited statement as of December 31, 1985, he showed net assets of over $39,000,000. He is currently involved in a joint venture in a $150,000,000 development of a corporate park in West Palm Beach. His wife's statement shows a total net worth of $3,490,165.40. The value of her share in the various real estate partnerships and "S" corporations, from which she has received some distributions sent to her by the husband, is unknown.

After the service of the husband's net worth statement, the wife moved for the appointment of an appraiser to determine the value of his various holdings and for a pro rata apportionment of the appraiser's fees. In support of her application she submitted an accountant's affidavit challenging, on the ground of its lack of clarity, the husband's use of "equity value", rather than fair market value, in evaluating his holdings. The accountant further challenged the husband's reduction of his net worth by a $3,000,000 "illiquidity discount" which, the accountant claimed, the husband took twice. Also cited was the husband's dubious use of a tax impact factor in calculating his net worth. In light of the paper losses he is able to generate, the accountant argued, the husband probably did

not pay taxes in the past and was not likely to do so in the future. For instance, in 1986, the husband showed an adjusted gross income of "minus $8,510,072". Thus, the accountant claimed, the husband's net worth was substantially understated because of the imposition of an artificial tax. The wife also questioned the valuation in the husband's statement of net worth of a 75-acre site in New Jersey, which she refers to as "Kudon House", an estate, and he characterizes as a "modest house". The site appears in the net worth statement as "undeveloped land".

The husband opposed the appointment of an independent appraiser as unnecessary and duplicative in light of his own exhaustive and detailed exposition of his holdings. He also argued that the court lacked statutory as well as inherent authority to make such an appointment. Citing the "extremely complex valuation issues herein", the court granted the motion and directed the appointment of J. Clarence Davies Realty Co., Inc., whose retainer was to be borne equally by the parties, with the remainder of the fee, if any, to be apportioned by the court at the time of trial (138 Misc 2d 775, 776).

Domestic Relations Law § 236 (B) (5) mandates that the court provide for an equitable distribution of the marital property of the parties in the final judgment of divorce. Obviously, an evaluation of the marital property is essential in carrying out that mandate. When the Equitable Distribution Law (L 1980, ch 281) was originally enacted, effective July 19, 1980, Domestic Relations Law § 237 (a), which provides for the award of counsel fees and expenses in matrimonial actions, did not contain any explicit authority to direct one spouse to pay all or part of the cost of the other's experts. The statute only provided that in any of the specified matrimonial actions "the court may direct either spouse * * * to pay such sum or sums of money directly to the attorney of the other spouse to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." Section 237 was not amended until almost three years later to add subdivision (c) (later redesignated subd [d]), effective June 9, 1983, which expressly provides that the term "expenses" as used in subdivisions (a) and (b) of the section shall include appraisal fees, accountant fees and actuarial fees.

Notwithstanding the absence of an explicit statutory provi-

sion therefor in the intervening years, courts routinely awarded funds to one spouse for the retention of an accountant or appraiser to examine the other spouse's records in order to evaluate them for the purposes of equitable distribution. *(See, e.g., Ahern v Ahern,* 94 AD2d 53; *Hubbard v Hubbard,* 113 Misc 2d 763; *Fay v Fay,* 108 Misc 2d 373, *rearg granted and prior determination adhered to* 108 Misc 2d 811; *Gueli v Gueli,* 106 Misc 2d 877.)* In *Gueli,* for instance, the court found in Domestic Relations Law § 236 (B) (5)'s mandate to make an equitable distribution of the marital property of the parties in the final judgment, and section 237's authorization to compel one spouse to pay for the other spouse's prosecution or defense of a matrimonial action, the inherent authority to appoint its own expert, whose charges would ultimately be borne by one or both of the parties.

Noteworthy in determining whether the courts had inherent power to appoint appraisers at a party's expense prior to the 1983 amendment of Domestic Relations Law § 237 is the legislative message which accompanied the amendment. In relevant part the memorandum stated, "This bill will expand the granting of pendente lite awards in matrimonial actions and is basically a codification of the court's recent interpretation of section 237." (Mem of Assemblyman Gordon W. Burrows, 1983 NY Legis Ann, at 60.) The amendment was not viewed as necessary to correct an oversight or to empower the judiciary with authority it did not previously possess. Rather, the legislation was essentially a housekeeping measure designed to eliminate any confusion about the extent of powers the courts were already exercising. Nothing in the legislative history indicates that the courts' prior awarding of appraisers' fees was considered extraordinary.

The husband, citing *Samuelsen v Samuelsen* (124 AD2d 650), argues that the Second Department has rejected the notion that courts have the inherent power to appoint an independent appraiser. The husband misinterprets *Samuelsen.* The court was not objecting to the appointment of an appraiser but, rather, to the submission of the appraiser's report directly to the trial court, which adopted his figures, without affording the parties the opportunity to review the report or cross-examine the appraiser. The husband also argues that the Court of Appeals in *Northrup v Northrup* (43 NY2d 566) clearly reaffirmed the restricted authority of courts in matrimonial matters. There, the court, in interpreting Domestic Relations Law § 248, held that courts could not terminate an

alimony provision merely upon a showing that the former wife was living with another man, but only upon a "holding herself out as his wife", as the statute requires. In so holding, the court noted, "The courts of this State have no common-law jurisdiction over divorce or its incidents" *(supra,* at 570). *Northrup* is readily distinguishable since there the court was concerned with a substantive statutory provision dealing with the right of a spouse to alimony in the event of a defined, specified changed circumstance. We are here dealing with a procedural matter only, one which involves the court's use of an available discovery device, as part of the truth finding process and within the common-law rules of evidence, in order to arrive at a fair result.

Moreover, courts, notwithstanding the absence of any explicit statutory authority, have been routinely appointing independent psychiatrists and psychologists in custody proceedings pursuant to Domestic Relations Law § 240, at least since 1962 when the Court of Appeals recognized the inherent authority to do so in *Kesseler v Kesseler* (10 NY2d 445). *Kesseler* involved a proceeding to modify a separation decree with respect to custody. Although the parties had stipulated to an investigation by a court-appointed family counselor (from the Family Counselling Unit), the court noted that consent was not necessary, observing: "The parties did not have to stipulate that the report of the family counsellor, Mrs. Golomb, should be made to the court. The court could have directed Mrs. Golomb to make an investigation, to be sure, and then could have left her testimony to the parties to deal with under common-law rules in the absence of their consent * * * Nor is there any reason which would prevent the court in the proper exercise of a judicial discretion from calling upon qualified and impartial psychiatrists, psychologists or other professional medical personnel, preferably under the auspices of the probation officer or family counselling unit connected with the court, to examine the infant or to examine the parents also if they will submit to such examination" *(supra,* at 452).

Indeed, the appointment of psychiatrists and psychologists in custody matters has become such an integral part of our practice that this court has held that the failure to order independent psychiatric and psychological testing constitutes an abuse of discretion, even when the need for such testing emerged in the middle of the hearing. *(Giraldo v Giraldo,* 85

AD2d 164, *appeal dismissed* 56 NY2d 804.)* Said the court, "[T]he evidence in this record does not permit us to make an informed judgment as to who should obtain custody. The hearing court abused its discretion in failing to order independent psychiatric and psychological testing once it became evident that its decision would turn upon such an evaluation of the parties and their oldest child" *(supra,* at 173-174).

In New Jersey, which has had an equitable distribution statute since 1971, the emerging case law has also sanctioned the use of independent appraisers. *(See, e.g., Fellerman v Bradley,* 191 NJ Super 73, 465 A2d 558, *affd* 192 NJ Super 556, 471 A2d 788; *Bowen v Bowen,* 96 NJ 36, 473 A2d 73; *Rothman v Rothman,* 65 NJ 219, 320 A2d 496.) In *Fellerman,* the court cited *Rothman,* which, it noted: "mandates that the matrimonial judge determine each asset's value for the purpose of equitable distribution and that an accountant will sometimes be needed to achieve that purpose. The use of a *court-appointed* expert accomplishes that stated purpose and does so more efficiently than if each party employed their own. On behalf of the court, he garners the assets and objectively evaluates them. He is not considered anyone's 'hired gun' and so disputes regarding his methodology or data base are typically few in number and easily resolved to everyone's satisfaction. In fact, his unique position has been shown to be significant in prompting settlement * * * The overall effect is that the costs to litigants are minimized, preserving more of the marital estate, and the likelihood of a negotiated accord is maximized, thereby greatly reducing trial time" *(supra,* 191 NJ Super, at 77-78, 465 A2d, at 560).

Nor does Domestic Relations Law § 237's provision empowering the court to direct the payment by one spouse of the other's expenses in the prosecution or defense of certain specified matrimonial actions limit the appointment of an appraiser to only those instances where need is shown, as the husband contends. Section 237 should not be so narrowly read. The conduct of one spouse may, for instance, warrant the imposition upon him or her of the responsibility for the payment of such expenses, irrespective of the other spouse's means. *(See, e.g., Stern v Stern,* 67 AD2d 253; *see also, Schussler v Schussler,* 109 AD2d 875.) In any event, the considera-

---

* It has been held that the Surrogate's Court has the inherent power to appoint an expert witness where necessary to achieve a just disposition. *(Matter of Atkinson,* 117 AD2d 843.)

tions justifying an award of fees in case of need differ from those in a case such as this where, conceptually, the independent appraiser is being appointed for the benefit of both parties, and to assist the court. In such circumstances, the parties should, in the first instance, share equally the expense of the retainer. Furthermore, as the order appealed provides, at trial the court will have an opportunity to assess the responsibility for any additional fees incurred and to reevaluate the equal sharing of the retainer in the first instance.

Accordingly, the order of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered December 18, 1987, which, *inter alia,* appointed an appraiser to evaluate the marital property, should be affirmed, without costs or disbursements.

CARRO, ASCH, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on December 18, 1987, unanimously affirmed, without costs and without disbursements.