ANNA KAPLOWITZ, an Infant, by Her Mother and Natural Guardian, ADRIENNE KATZ, et al., Respondents, v BORDEN, INC., et al., Defendants, and CAROL CHISLOVSKY, INC., et al., Appellants.

First Department, March 11, 1993

APPEARANCES OF COUNSEL

*Denis P. O'Leary* of counsel *(Benjamin J. Waldman* with him on the brief; *Neufeld & O'Leary,* attorneys), for Carol Chislovsky, Inc., appellant.

*Brian P. Mullen* of counsel *(Daniel W. Isaacs* with him on the brief; *Berel & Mullen,* attorneys), for Gregory Chislovsky Design, Inc., appellant.

*Alexander J. Wulwick* of counsel *(Glaser, Shandell & Blitz,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

This is a products liability and negligence action in which plaintiffs seek to recover damages for personal injuries sustained by the infant plaintiff as a result of her mother's exposure, during her pregnancy with the infant plaintiff, to spray paint manufactured and distributed by defendants and for the plaintiff mother's loss of services, society and companionship of the infant plaintiff. During the plaintiff mother's deposition and subsequently, by letters dated respectively March 11 and 27, 1991, defendants, Carol Chislovsky, Inc., the plaintiff mother's employer during the period in which she was pregnant with the infant plaintiff, and Gregory Chislovsky Design, in whose premises the mother's employer's offices were situated, separately requested authorizations for the release of certain medical records of the plaintiff mother.

In May 1991, in response to a motion by plaintiff for unrelated relief, defendants separately moved, *inter alia,* to compel the plaintiff mother to provide authorizations for the release of the medical records at issue. On May 20, 1991, the IAS Court granted the motions only to the extent of directing plaintiffs to provide authorization for the plaintiff mother's admission and treatment records at Mt. Sinai Hospital at the time of the infant plaintiff's birth. In an order entered June 7,

1991, this order was amended to the extent of considering certain reply affidavits, the court noting that those affidavits and the annexed doctor's report did not require modification of the court's decision. Upon defendants' motions to reargue their prior cross motions, the IAS Court, in an order entered July 23, 1991, granted reargument and, upon reargument, directed the plaintiff mother to produce the medical records pertinent to her abortions and miscarriage to the court for an in camera inspection as to their relevance to the issues involved. On November 12, 1991, following an in camera inspection of the medical records provided by the plaintiff mother's gynecologist, the court determined that such records had no relevance to the issues involved in the case and were therefore not discoverable. Defendants have appealed from all four orders.

In an order entered November 5, 1992 (187 AD2d 254, 255), this Court, concluding that "[t]he records sought may well contain information material and relevant to the issues presented in the underlying action" and that "[w]ithout our own independent inspection, we cannot determine the correctness of [the IAS Court's] determination" that the materials it reviewed were not relevant, held the appeals in abeyance pending the production of and in camera review by this Court of all the " 'medical records pertinent to [the plaintiff mother's] abortions and miscarriage' ", as required by the July 23, 1991 order.

The medical records as to which defendants seek authorizations concern the plaintiff mother's pregnancies subsequent to the birth of the infant plaintiff. Defendants contend that the records contain information which is material and necessary in that the plaintiff mother may have undergone *in utero* or genetic tests which reveal deficiencies similar to those of the infant plaintiff. Plaintiffs assert that the medical records as to which the authorizations are sought fall within the physician-patient privilege of CPLR 4504 and that the plaintiff mother did not waive the privilege by bringing a derivative cause of action for loss of services or by her testimony at the examination before trial.

The physician-patient privilege prohibits disclosure of any information acquired by a physician "in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." (CPLR 4504 [a]; *Dillenbeck v Hess,* 73 NY2d 278, 289.) However, "[a] litigant will be deemed to have waived the privilege when, in bringing or defending a

personal injury action, that person has affirmatively placed his or her mental or physical condition in issue." *(Supra,* at 287, citing *Koump v Smith,* 25 NY2d 287, 294.)

In this case, we conclude that by bringing a derivative cause of action, the plaintiff mother waived the physician-patient privilege. In her cause of action for loss of services, the mother alleges that the infant plaintiff sustained injuries as a result of defendants' conduct in, *inter alia,* improperly and negligently furnishing the plaintiff mother with products which were harmful and failing to provide a safe workplace. By alleging that the plaintiff mother's health and, thereby, the infant's health were affected by defendants' conduct, plaintiffs have affirmatively placed in controversy the mother's physical condition insofar as it is relevant to the issues involved in the action and, specifically, the question whether the infant plaintiff's birth defects are a result of a genetic disorder. The mother's medical history, which "neither begins nor ends at the infant plaintiff's birth" *(Williams v Roosevelt Hosp.,* 108 AD2d 9, 10, *affd* 66 NY2d 391), is especially relevant where a defense is based on a genetic predisposition toward birth defects.

That is not to say, however, that all medical records relating to the mother's subsequent pregnancies are material and necessary to the defense of this action and must therefore be disclosed. *(See,* CPLR 3101 [a]; *Sibley v Hayes 73 Corp.,* 126 AD2d 629, 631.) We have examined the medical records that were submitted to the IAS Court for in camera inspection and, while we do not find that they contain information relevant to the issues involved in this action, we recognize, as we must, that we are without the medical expertise to make an informed determination on that question, which, we believe, should be decided by an independent medical expert. Therefore, we remand the matter to the trial court for the appointment of a medical expert *(see, Zirinsky v Zirinsky,* 138 AD2d 43) to review, in camera, all the medical records pertaining to the plaintiff mother's subsequent pregnancies* and to render an opinion based upon the expert's medical training and expertise as to whether they contain any information bearing on whether the infant plaintiff's birth defects are the result of a genetic disorder. The cost of the rendition of such an opinion shall be borne by defendants.

---

* These records may include documents which have not yet been submitted to the IAS Court.

Accordingly, the appeals from the orders of Supreme Court, New York County (Shirley Fingerhood, J.), entered May 29 and June 7, 1991, which, *inter alia,* respectively, denied defendants' cross motions to compel production of certain medical records and amended the prior order only to the extent of considering reply affidavits but refused otherwise to modify said order should be dismissed as superceded by the appeals from the subsequent orders entered July 23 and November 12, 1991. The orders of said court and Justice entered July 23 and November 12, 1991, which, respectively, *inter alia,* granted reargument and, upon reargument, directed plaintiff mother to produce certain medical records for in camera review, and, after in camera inspection, determined that said records "have no relevance to the issues in this case", should be reversed, on the law and on the facts, without costs or disbursements, and defendants' cross motions granted to the extent of directing the appointment of an independent medical expert to review, in camera, the medical records relating to plaintiff mother's pregnancies subsequent to the infant plaintiff's birth and to render an opinion as to whether they contain any information bearing on whether the infant plaintiff's birth defects are the result of a genetic disorder, with the cost thereof to be borne by defendants.

CARRO, ASCH and RUBIN, JJ., concur.

Appeals from the orders of Supreme Court, New York County, entered May 29 and June 7, 1991, which, *inter alia,* respectively, denied defendants' cross motions to compel production of certain medical records and amended the prior order only to the extent of considering reply affidavits but refused otherwise to modify said order are dismissed as superceded by the appeals from the subsequent orders entered July 23 and November 12, 1991. The orders of said court and Justice entered July 23 and November 12, 1991, which, respectively, *inter alia,* granted reargument and, upon reargument, directed plaintiff mother to produce certain medical records for in camera review, and, after in camera inspection, determined that said records "have no relevance to the issues in this case", are reversed, on the law and on the facts, without costs or disbursements, and defendants' cross motions granted to the extent of directing the appointment of an independent medical expert to review, in camera, the medical records

relating to plaintiff mother's pregnancies subsequent to the infant plaintiff's birth and to render an opinion as to whether they contain any information bearing on whether the infant plaintiff's birth defects are the result of a genetic disorder, with the cost thereof to be borne by defendants.