Scileppi, J.
This is an action to recover damages for personal injuries. Plaintiff was allegedly injured when the defendant drove his vehicle across the center divider of Route 304 at New City, New York, crashing head-on into plaintiff’s vehicle. The complaint alleges, inter alia, that prior to the accident defendant consumed alcoholic beverages; that at the time of *290 the collision the defendant was drunk and unable to control his vehicle, and, that the collision resulted from defendant’s intoxicated condition. The answer denies these allegations.
On April 7, 1967 plaintiff’s attorneys sent a notice to defendant’s attorney pursuant to CPLR 3121 requiring defendant to execute and acknowledge written authorization permitting plaintiff or his attorneys ‘ ‘ to obtain and make copies of the records of Nyack Hospital, relating to the physical condition of the above named defendant including the concentration of alcohol in his blood following the accident between the parties, out of which this accident arose, the mental or physical condition of the defendant being in controversy in this action ”. Defendant’s attorney apparently refused to abide by the notice. Instead of defendant’s moving for a protective order pursuant to CPLR 3122, it was agreed between the parties that, because of the unprecedented nature of the demand, plaintiff would make an application for a court order directing defendant to comply with the notice.
The only paper submitted in support of the motion was an affidavit by plaintiff’s attorney which states in part: “ As the Court will see by examining Paragraphs 10, 11 and 14 of the complaint, the plaintiff alleges that the accident was caused, among other things, by the fact that the defendant was driving while intoxicated. The Police Report indicates that this was so and that the Police learned this fact from the Nyack Hospital to which both plaintiff and defendant were taken following the accident.”
The relevant parts of the opposing affidavit submitted by defendant’s attorney reads as follows:
“ That contrary to the plaintiff’s attorney’s affidavit, the police report lists the apparent condition of the defendant James E. Smith as normal and any other hearsay remarks on the police report not made by the policeman is hearsay and therefore not admissible.
* * *
“ That whatever hospital records there are concerning the defendant, they are confidential between the hospital and patient or the doctor and patient and thus form a -part of privileged communications.
*291 “ That the defendant in this case has not put his physical condition in controversy within the meaning of Section 3121 of the Civil Practice Law and Rules.”
The court at Special Term denied the application without opinion. On appeal, the Appellate Division, by a sharply divided court, affirmed and granted leave to appeal certifying the following question: “ Was the order of this court, dated April 22, 1968, properly made ? ’ ’ For the reasons that follow, the question is answered in the affirmative.
The applicable statutes are sections 3101 (subds. [a], [b]) and 3121 of the CPLR. Section 3101 provides that “ There shall be full disclosure [by a party] of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof, * * * [but] (b) Upon objection by a party privileged matter shall not be obtainable.”
Section 3121 (subd. [a], provides in pertinent part: “After commencement of an action in which the mental or physical condition * * * of a party * * * is in controversy, any party may serve notice on another party to submit to a physical [or] mental * * * examination by a designated physician * * * The notice may require duly executed and acknowledged written authorizations permitting all parties to obtain, and make copies of, the records of specified hospitals relating to such mental or physical condition ”.
The majority and dissenters at the Appellate Division held that the statute permits a defendant or, in the proper case, a plaintiff to obtain a mental or physical examination of the other party and an inspection of his hospital records. Clearly this holding is correct, for on its face the statute allows a party to obtain an examination and hospital records of any party whose mental or physical condition is in controversy. Disclosure is not a one-way street and surely the Legislature did not intend to favor one class of litigants over another.
The Appellate Division, however, never reached the primary question of whether the defendant’s physical condition is in controversy. The majority was of the opinion that all the discovery and disclosure provisions of the CPLR are limited by CPLR 3101 (subd. [b]) which provides that “Upon objection by a party privileged matter shall not be obtainable.” “ Under *292 these statutes,” said the majority, “plaintiff must not only show that defendant’s physical condition has been placed in controversy as required by CPLE 3121 (subd. [a]), but he must also show that defendant has either waived his right to object under CPLE 3101 (subd. [b]) or, in the alternative, show that the information sought to be obtained is not privileged (cf. Vehicle and Traffic Law, § 1192, subd. 3).” Having laid down this rule, the court held that plaintiff had failed to sustain the burden of either waiver or nonprivilege and, therefore, did not pass upon the question of whether defendant’s physical condition had been placed in controversy. The dissenters apparently found no question of privilege in the case and concluded that disclosure was warranted because defendant’s physical condition was in controversy.
The question of whether the doctor-patient privilege obtains when a party’s mental or physical condition is in controversy has not received uniform treatment by the lower courts.
Under former section 354 of the Civil Practice Act the doctor-patient privilege could be waived only upon the trial or examination. To avoid the restriction of the statute, many courts adopted local rules which had the effect of forcing a waiver, although in interpreting these rules the courts took the technical position that the privilege was not violated by them. For example, the Appellate Division, Second Department, had a rule that no case involving hospitalization can be placed on the Trial Calendar unless plaintiff has furnished defendant with written authorization to obtain copies of the hospital record. In Kriger v. Holland Furnace Co. (12 A D 2d 44, 47) the court held that the rule does not prevent plaintiff from invoking privilege,, but “ as long as she insists on asserting that right, she may not also insist that her case must be advanced for trial ”. Under this holding a party quickly made his hospital records available, although even then, as a technical matter, because of the restrictions on waiver in section 354 of the Civil Practice Act, he did not waive the privilege.
With the adoption of the CPLE, the restrictive provisions on waiver were entirely eliminated. Giving a liberal interpretation to the disclosure provisions of the CPLE, the lower courts began to hold that a person who commences an action for personal injuries removes the privilege as to doctor reports in *293 hospital records to the extent, at least, that he must comply with a defendant’s demand for authorization to examine hospital records relating to those injuries (De Castro v. City of New York, 54 Misc 2d 1007; Chester v. Zima, 41 Misc 2d 676).
In Fisher v. Fossett (45 Misc 2d 757) the same Judge who decided Chester v. Zima (supra) carried the rationale of that case a step further and held that the doctor-patient privilege does not apply where a party commences or defends an action in which his physical condition is in controversy.
The facts of that case are significant and should be noted. Although the complaint and answer did not put the defendant’s physical condition into issue, the court found that the defendant had affirmatively put her physical condition in controversy by stating in an MV" 104 report and at an examination before trial that she had a coronary condition which caused her to black out at the wheel of her car. As the court noted, the sole controversy at the trial would be whether or not defendant’s physical condition would excuse “ what otherwise would prima facie appear to be an indefensible act of negligence ” (Fisher v. Fossett, supra, at p. 758).
In O’Leary v. Sealey (50 Misc 2d 658), where the complaint alleged that defendant was subject to epileptic fits and defendant testified at an examination before trial that she got onto the parkway and then awoke in the hospital, the court, relying on the Fisher case, stated in a dictum that, on proper papers and demand, the plaintiff could obtain disclosure of defendant’s hospital records.
The doctor-patient privilege is a creature of statute, for at common law a physician could be compelled to disclose the information he acquired while treating the patient (Steinberg v. New York Life Ins. Co., 263 N. Y. 45). In 1828 New York became the first jurisdiction to change the common-law rule when it established a statutory privilege between physician and patient. Over the years, however, the privilege has been severely criticized by leading commentators on the law of evidence, primarily on the ground that the privilege suppresses the truth, resulting in an injury to justice far more substantial than the injury expected to result to the doctor-patient privilege as a result of disclosure (see, e.g., 5 Weinstein-Korn-Miller, par. *294 4504.02; 8 Wigmore, Evidence [McNaughton Rev., 1961], § 2380a; McCormick, Evidence, § 108).
Notwithstanding the strong criticism of the rule, it remains today as part of our statutory law as section 4504 of the CPLB. Although this is somewhat indicative of strong policy in New York in favor of the privilege, we nevertheless agree with the lower court cases cited above that in personal injury actions there is little reason for the rule. We hold, therefore, that by bringing or defending a personal injury action in which mental or physical condition is affirmatively put in issue, a party waives the privilege. As a practical matter, a plaintiff or a defendant, who affirmatively asserts a mental or physical condition, must eventually waive the privilege to prove his case or his defense. To uphold the privilege would allow a party to use it as a sword rather than a shield. A party should not be permitted to assert a mental or physical condition in seeking damages or in seeking to absolve himself from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition.
We do not hold that the privilege is waived whenever a party defends an action in which his mental or physical condition is in controversy. The rule laid down today is limited to cases in which a defendant affirmatively asserts the condition either by way of counterclaim or to excuse the conduct complained of by the plaintiff. Thus in the instant case where defendant has simply denied the allegation of the complaint, the privilege should be recognized (cf. Steinbrecher v. Wapnick, 24 N Y 2d 354).
We disagree, however, with the Appellate Division’s holding that the burden of showing either waiver or nonprivilege is on the plaintiff. In light of the strong policy in favor of full disclosure unless the information sought is immunized, the burden of showing the appropriate immunity should be on the party asserting it (Haire v. Long Is. R. R. Co., 53 Misc 2d 536). Indeed it has long been the law, at least at the trial stage, that when a party asserts the doctor-patient privilege, the burden is on him “ to show the existence of circumstances justifying its recognition” (Bloodgood v. Lynch, 293 N. Y. 308, 314; see, also, People v. Decina, 2 N Y 2d 133; People v. Schuyler, 106 *295 N. Y. 298; People v. Downs, 5 A D 2d 935 ; Deutschmann v. Third Ave. R. R. Co., 87 App. Div. 503). There appears to be no reason based either in logic or policy why the burden should be different during the pretrial stage.
As noted earlier, the Appellate Division did not pass upon the question of whether defendant’s physical condition was “ in controversy ” within the meaning of CPLR 3121. It seems to us, however, because of the paucity of appellate court decisions in this area and because of the particular facts of this case, that we should lay down guidelines for'the lower courts. In making a determination on this question, it is to be noted that, if the mental or physical condition of a party is in controversy, the other party may not only be entitled to his hospital records but may have him submit to a mental or physical examination.
Manifestly, if a plaintiff in a negligence action asserts a mental or physical injury, he places that condition in controversy within the meaning of the statute. This rule should apply equally to a defendant who asserts his mental or physical condition either by way of counterclaim or as a defense to the plaintiff’s claim.
None of the few reported cases which have held that the defendant’s physical condition was in controversy have involved the clear-cut situation contemplated by the latter rule. Thus in the Fisher case (45 Misc 2d 757, supra), where neither the plaintiff nor the defendant pleaded the physical condition of the defendant, it was nevertheless held that defendant’s condition was in controversy. This was so, said the court, because defendant claimed at an examination before trial and in an MV 104 report that she had a coronary condition which caused her to blackout. In essence this was an affirmative claim by defendant that her otherwise negligent conduct was excusable because of her physical condition. In O’Leary v. Sealey (50 Misc 2d 658, supra), where the defendant testified at an examination before trial that she got onto the parkway and then awoke in the hospital, the court refused to allow plaintiff to physically examine the defendant. The refusal, however, was based not on the ground that defendant’s physical condition was not in controversy, but on the ground that a physical examination would not show what defendant’s condition was at *296 the time of the accident. The court did hold, relying on Fisher, that plaintiff, who alleged that defendant was subject to epileptic fits, could on proper papers and demand obtain disclosure of defendant’s hospital records.
Section 2032 of the California Code of Civil Procedure, like section 3121 of the CPLR, provides for an examination of a party whose mental or physical condition is in controversy. In Harabedian v. Superior Ct. (195 Cal. App. 2d 26), it was held that the trial court could properly order an eye examination of defendant because the defendant had testified at a pretrial hearing that he had a congenital defect in the right eye and that he did not know what his vision was except that objects were blurred.
A strikingly similar case was decided by the Appellate Division, Fourth Department, in Constantine v. Diello (24 A D 2d 821). There plaintiff’s intestate, who was walking or running along a public highway, was allegedly run down by a motor vehicle operated by the defendant. In a motor vehicle hearing after the accident, defendant testified that his vehicle was traveling at a speed of between 15 and 20 miles per hour and that he did not see the girl until she ran into the side of the vehicle. He further testified that the accident occurred in daylight and his view was unobstructed. An eye test taken at the hearing disclosed that his vision was impaired. Plaintiff alleged in her bill of particulars that defendant was negligent in that he operated the vehicle while suffering from defective eyesight. In holding that plaintiff was entitled to an examination of defendant’s eyes, the Appellate Division said: “ The requirement of CPLR 3121 (subd. [a]) that the examination be allowed only if the physical condition of the party is in controversy does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a physical examination but he must produce sufficient information to satisfy the court that such condition is in controversy. (Schlagenhauf v. Holder, 379 U. S. 104.) In this case appellant’s proof is sufficient to entitle her to the examination specified in her notice.” (Constantine v. Diello, supra, at pp. 821-822.)
The Schlagenhauf case cited by the Appellate Division in Constantine v. Diello states the Federal view in this area. That case was decided under rule 35 of the Federal Rules of Civil *297 Procedure, which provides for a physical examination of a party whose physical condition is in controversy. Unlike section 3121 of the CPLR, however, the Federal rule additionally requires a court order for the examination “ for good cause shown ”.
Schlagemhauf involved a collision between a bus and tractor-trailer. Some of the bus passengers brought a diversity action for damages naming the bus company, its driver, the owners of the tractor and trailer, and the tractor driver as defendants. The bus company cross-claimed against the codefendants for damage to its bus, claiming that the collision resulted from their negligence. Codefendant tractor owner answered the cross claim, denied negligence, and alleged that the bus driver was “ not mentally or physically” capable of driving a bus at the time of the accident and his negligence proximately caused damage to the bus. Codefendant trailer owner answered the bus company’s cross claim and itself cross-claimed against the bus company and bus driver for damage to its trailer, alleging negligence by the bus company and bus driver through the latter’s having been permitted to drive the bus despite a known visual deficiency. The District Court Judge, over the bus driver’s objection, granted an order for internal medicine, ophthalmologieal, neurological and psychiatric examinations. The bus driver then sought a mandamus order in the Court of Appeals against the District Court Judge. The order was denied. Aside from the Federal procedural aspects of the mandamus question, the Supreme Court used the case as a vehicle for laying down guidelines for the lower courts in determining questions under rule 35 of the Federal Rules of Civil Procedure. The court held that, where the condition of a party is sought to be placed in controversy by another party or parties, the party seeking the physical examination must make an affirmative showing that the condition of the party sought to be examined is really and genuinely in controversy. This burden is not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case.
In addition to the pleadings, the only proof tending to show that the bus driver’s physical condition was in controversy was an attorney’s affidavit that stated:
“ 'That . . . Schlagenhauf, in his deposition . . . admitted that he saw red lights for 10 to 15 seconds prior to a collision *298 with a semi-tractor trailer unit and yet drove his vehicle on without reducing speed and without altering the course thereof.
‘ ‘ ‘ The only eye-witness to this accident known to this affiant . . . testified that immediately prior to the impact between the bus and truck that he had also been approaching the truck from the rear and that he had clearly seen the lights of the truck for a distance of three-quarters to one-half mile to the rear thereof.
“'. . . Schlagenhauf has admitted in his deposition . . . that he was involved in a [prior] similar type rear end collision ...’ ” (Schlagenhauf v. Holder, 379 U. S., at p. 120.)
The court held that this record was insufficient to support the broad order requiring the physical examination in several areas of medicine. Instead of reversing, however, the court remanded the case to the District Judge for reconsideration in light of the opinion. Significantly the court ended its opinion with the following comment: “ The Federal Rules of Civil Procedure should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations. The ‘ good cause ’ and ‘ in controversy ’ requirements of Rule 35 make it very apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident — or, as in this case, two accidents — and a general charge of negligence is lodged. Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases. The plain language of Rule 35 precludes such an untoward result ” (supra, at pp. 121-122).
Justice Douglas joined the court in reversing but dissented in part on the ground that on the remand he would deny all relief requested under rule 35. His reasons are particularly striking: “ When the defendant’s doctors examine plaintiff, they are normally interested only in answering a single question: did plaintiff in fact sustain the specific injuries claimed? But plaintiff’s doctors will naturally be inclined to go on a fishing expedition in search of anything which will tend to prove that *299 the defendant was unfit to perform the acts which resulted in the plaintiff’s injury. And a doctor for a fee can easily discover something wrong with any patient — a condition that in prejudiced medical eyes might have caused the accident. Once defendants are turned over to medical or psychiatric clinics for an analysis of their physical well-being and the condition of their psyche, the effective trial will be held there and not before the jury. There are no lawyers in those clinics to stop the doctor from probing this organ or that one, to halt a further inquiry, to object to a line of questioning. And there is no judge to sit as arbiter. The doctor or the psychiatrist has a holiday in the privacy of his office. The defendant is at the doctor’s (or psychiatrist’s) mercy; and his report may either overawe or confuse the jury and prevent a fair trial ” {supra, at p. 125).
The facts of the instant case differ critically from cases heretofore decided. In each of those cases the defendant’s physical condition was in controversy, either because he affirmatively asserted it in a pleading or at an examination before trial or because he had undergone a prior physical examination which substantiated or gave credence to the allegations of the plaintiff’s complaint. In the instant case, however, we have only the plaintiff’s pleading and the statement in the attorney’s affidavit that the police report says that the policeman said that Dr. Sperling said that the defendant appeared intoxicated ■—a double link of hearsay. In our view, although this lends some credence to plaintiff’s complaint, it is not sufficient to put defendant’s physical condition in controversy within the meaning of the statute. As a matter of policy, something more must be required.
We hold that the proper procedure to be followed in cases of this nature is for the party seeking the mental or physical examination or hospital records to send a notice to the other party pursuant to CPLR 3121. It is then incumbent on the other party in order to avoid compliance with the notice to move for a protective order pursuant to the provisions of CPLR 3122. In this way, the question of whether a party’s mental or physical condition is in controversy can be developed on affidavits sworn to by persons having knowledge of the facts *300 and by other available proof relevant to the issue, thus forming a basis for an order by the trial court which could be reviewed intelligently on appeal.
The burden of proving that the party’s mental or physical condition is in controversy, of course, is on the party seeking the examination or hospital records. The affidavits must contain evidentiary matter and not mere conclusory statements. Because the affidavit must be sworn to by a person having knowledge of the facts, an affidavit by an attorney should be disregarded unless he happens to have personal knowledge of the facts.
In the instant case, it is clear that the record developed below was not sufficient to support a conclusion that the defendant’s physical condition is in controversy. The only support for the motion is the affidavit of the plaintiff’s attorney. That affidavit, which does not appear to be based upon personal knowledge, contains no facts; it merely refers the court to the allegations of the complaint and concludes that defendant was intoxicated because a police report indicates that this was so. However, neither the police report nor a policeman’s affidavit nor a doctor ’s affidavit is attached to the moving papers. Indeed, there is no competent evidence in the record to show whether defendant was even confined in Nyack Hospital or whether a blood test was taken.
Accordingly, the order appealed from should be affirmed and the certified question answered in the affirmative.