Bellacosa, J.
(dissenting). I respectfully disagree with the majority because in my view the rule in Koump v Smith (25 NY2d 287) is misapplied and then extended in a direction antithetical to that which was intended. Defendant is thus allowed to wield the physician-patient privilege, against the truth-finding process in a case in which the remedial statutory protection (CPLR 4504 [a]) and in which sound policy and interpretation compel the opposite result (compare, Vehicle and Traffic Law § 1194 [2] [a]; former § 1194-a [2] [a]; § 1194 [3] [b] [1]). I would grant disclosure of defendant’s hospital record of a blood test showing an alcohol content of .27 — almost three times the legal limit (Vehicle and Traffic Law § 1192 [2]). My vote is to reverse the denial in the lower courts of the plaintiffs’ motion.
Tonia Dillenbeck was killed and her 10-year-old son, one of the plaintiffs here, was seriously injured when the vehicle in which they were riding was hit by one driven by defendant Hess. Hess was injured, hospitalized, and a blood alcohol test *291 was administered. In a criminal action arising from this same incident, the defendant was convicted of criminally negligent homicide. Plaintiffs sue for wrongful death and personal injuries, and contend that Hess’ intoxication caused the accident.
Hess pleaded in her answer by general denial that she was not intoxicated, and affirmatively asserted comparative negligence and plaintiffs’ failure to wear seat belts. Also, during the examination before trial, she claimed to have no memory of the accident or its attendant details.
Plaintiffs formally moved to compel defendant Hess to execute authorization for them to obtain a copy of Hess’ hospital records pertaining to her blood alcohol content. Defendant opposed discovery, arguing that she enjoyed a physician-patient privilege in this respect. The Appellate Division affirmed the denial of discovery, holding that when defendant driver simply denies being intoxicated, the physician-patient privilege prevails. This court affirms, principally relying on Koump v Smith (25 NY2d 287, supra) and its interpretation of CPLR 4504.
I disagree with what I perceive to be the majority’s holding: (1) that the party enjoying the physician-patient privilege must personally waive it in the sense that a waiver cannot be effected by operation of law through a party’s conduct, and (2) that it is defendant alone who subjectively determines whether her own physical condition is "in controversy” and who thus controls whether plaintiff may gain access to vital evidence. The practical consequence of the majority’s holding is to deny drunk driving accident victims access to blood alcohol test results and to allow defendant to conceal key scientific evidence from plaintiffs and from the adjudication process.
The physician-patient privilege is a statutory shield overturning the common-law rule generally allowing disclosure of otherwise admissible communications to a physician, even those made in the strictest confidence. The remedial statute (CPLR 4504) is premised on the perceived necessity of encouraging uninhibited communications by patients to physicians, presumably producing better medical advice and treatment. The underlying rationale for this rule has more lately been questioned and criticized by commentators for conflicting with New York’s modern, liberal disclosure scheme under CPLR 3101 (a) and 3121, and for impeding the courts’ primary truth-seeking function (see, 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4504.02; McLaughlin, 1970 Supplementary Practice Com *292 mentary, McKinney’s Cons Laws of NY, Book 7B, 1989 Supp Pamph, CPLR 4504, at 319; 8 Wigmore, Evidence § 2380a [McNaughton rev 1961]; McCormick, Evidence § 108). Misuse of the privilege prompted this observation: "Actually the privilege is utilized as a tactical maneuver, and is seldom invoked for any purpose other than to suppress facts that are injurious to the legal position of the person who seeks its protection. Rarely is it used to guard a secret” (Fisch, NY Evidence § 557 [2d ed]). For these reasons, the modern approach is to apply the privilege restrictively rather than expansively (see, Williams v Roosevelt Hosp., 66 NY2d 391, 396; see also, 8 Wigmore, Evidence § 2380a, at 832 [McNaughton rev 1961]; see also, NY Proposed Code of Evidence § 509 [d] [4] [providing disclosure of privileged communications in the generalized interest of justice]; compare, Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 159).
The privilege and its underlying policy are also put in significant competition with statutory developments in the Vehicle and Traffic Law designed to address the great public concern and interest in dealing with drunk drivers. The law in this State now is that any person who operates a motor vehicle shall be deemed to have given consent to a chemical test where there are reasonable grounds to believe that the driver’s ability was impaired by alcohol, provided the test is administered by or at the direction of a police officer (Vehicle and Traffic Law § 1194 [2] [a]). Furthermore, submission to a chemical test is compulsory when a person has been killed or seriously injured by a drunk driver (Vehicle and Traffic Law § 1194 [3] [b] [1]). Holding that a person has a privilege of this kind in an area regarding information that the State explicitly elsewhere requires to be disclosed creates an unnecessary inconsistency in statutory application.
Koump v Smith (25 NY2d 287, supra), with appropriate consideration to all its many facets, does not, in my view, compel the result reached by the majority. The drivers of two automobiles were hospitalized following a head-on collision. Blood tests were taken and in a personal injury action the plaintiff sought the results of the defendant’s blood test, contending that it would confirm plaintiff’s allegation that defendant had been intoxicated. Defendant’s answer simply denied the allegation of intoxication; he raised no counterclaim and offered no explanation. The only support for plaintiff’s motion was an affidavit by plaintiff’s attorney which was based on double hearsay. We acknowledged that while a *293 plaintiff waives the physician-patient privilege by commencing an action which puts plaintiff’s own physical condition in issue, a defendant may not be deemed similarly or automatically to have waived the privilege simply by defending an action for personal injury. To effect a waiver of defendant’s privilege by operation of law based on defendant’s own actions, Koump teaches that a defendant must "affirmatively assert[] the condition either by way of counterclaim or to excuse the conduct complained of by the plaintiff” (25 NY2d, at 294, supra [emphasis added]). In other words, the person asserting the privilege cannot have it both ways and especially may not use the shield as a sword.
But the court’s analysis did not end there; the court went on to explain what is needed to place physical condition in controversy. The court exemplified with cases in which defendant’s pleadings had not placed physical condition "in controversy”, but in which the evidentiary showing nevertheless put the condition genuinely "in controversy” (see, Koump v Smith, at 295-298, supra). The court then differentiated the case before it from those cases: "In each of those cases the defendant’s physical condition was in controversy, either because he affirmatively asserted it in a pleading or at an examination before trial or because he had undergone a prior physical examination which substantiated or gave credence to the allegations of the plaintiff’s complaint. In the instant case, however, we have only the plaintiff’s pleading and the statement in the attorney’s affidavit that the police report says that the policeman said that Dr. Sperling said that the defendant appeared intoxicated — a double link of hearsay. In our view, although this lends some credence to plaintiff’s complaint, it is not sufficient to put defendant’s physical condition in controversy within the meaning of the statute. As a matter of policy, something more must be required” (id., at 299).
The court then mapped out how to satisfy the burden. "The affidavits must contain evidentiary matter and not mere conclusory statements. Because the affidavit must be sworn to by a person having knowledge of the facts, an affidavit by an attorney should be disregarded unless he happens to have personal knowledge of the facts” (id., at 300). Most significantly, the Koump court affirmed the denial of discovery "without prejudice to a new application upon a proper showing”.
As Judge Bergan’s concurring opinion tersely sums it all up, *294 the holding in Koump cannot be interpreted to mean that "the assertion of a physical cause for an accident, and the denial of the assertion by a defendant, can never constitute a sufficient basis for inspecting defendant’s hospital records; because, if this were its holding, it would have flatly cut off any possible inspection on this record and not allowed renewal of the application” (id., at 300 [Bergan, J., concurring]; see also, Prink v Rockefeller Center, 48 NY2d 309, 316; Barker, 1970 Survey of New York Law: Evidence, 22 Syracuse L Rev 99, 109-110).
If a party comes forward with unequivocal proof of the other party’s physical condition at the time of the accident, the condition should be deemed "in controversy” and evidence relating to it subject to discovery. When a party puts the other party’s condition "in controversy” by such evidence and when a party is clearly not on a "fishing expedition”, the interest of letting truth triumph outweighs the defendant’s desire to cloak highly relevant scientific evidence in secrecy. This is consistent with the words of the statute, with the intent of the statutory protection, with a realistic interpretation of Koump, with sound construction of remedial statutes in derogation of the common law, and with present-day legislative attitudes reflected in related statutory developments. This should be especially so when that result and analysis also coincide with the general modern trend towards open and full reciprocal discovery and with fundamental fairness between the parties.
In Williams v Roosevelt Hosp. (66 NY2d 391, supra), our court’s own most recent articulation in this general area, this very privilege was accorded a narrow interpretation, holding it applicable to confidential communications only and "not the mere facts and incidents of a person’s medical history” (id., at 396; see also, Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, supra). Arguably, though it is not necessary to decide in this case, the blood alcohol content test results may not even be a "communication” under Williams because it is neither confidential nor intended to be secreted within the physician-patient privilege in this narrow context.
In sum, plaintiffs’ motion for discovery in this case should be granted for several interrelated reasons. First, unlike the defendant in Koump who simply denied plaintiff’s allegation of intoxication, defendant Hess has gone far beyond that in *295 this case — she claims no memory of the event and has affirmatively pleaded comparative negligence and plaintiffs’ failure to wear seat belts. In so doing, defendant Hess has sought in whole and in part to "excuse” her conduct. Thus, in this context, defendant Hess should be charged by operation of law with a waiver of the privilege by affirmatively placing her own physical condition "in controversy” (Koump v Smith, supra, at 294).
Second, plaintiffs’ proffer of evidence supporting their discovery motion also satisfies Koump’s standard that plaintiff can bring about a legal waiver of defendant’s privilege by an evidentiary showing that defendant’s condition is genuinely "in controversy” (id., at 300). Plaintiff submitted affidavits from persons swearing on their own direct knowledge that they observed defendant Hess consume 9 or 10 alcoholic drinks in the hours just prior to the accident. Plaintiff has also established through submission of the sentencing minutes from defendant’s conviction for criminally negligent homicide that a blood alcohol test was conducted at the hospital and that the test reveals that defendant was highly and legally intoxicated at the time of the accident.
Third, it cannot be said that this defendant has a legally cognizable privilege expectation with respect to her blood alcohol test results, especially in view of the Legislature’s present-day policies and statutory expressions in this area.
Taken together, these satisfactions by plaintiffs and by defendant of Koump’s prerequisites and adherence to sound statutory construction and the latest policy reflections from the Legislature all lead to only one conclusion — reversal in favor of plaintiffs.
To allow defendant to sweep scientific evidence under the rug of a physician-patient privilege in this case is to allow her to hide the truth, without legal justification or good purpose.
Judges Simons, Titone and Hancock, Jr., concur with Judge Alexander; Judge Bellacosa dissents and votes to reverse in a separate opinion in which Chief Judge Wachtler and Judge Kaye concur.
Order affirmed, with costs, and certified question answered in the negative.