OPINION OF THE COURT
Thomas E. Walsh, S.
Alice Elyachar moves this court for an order compelling Richard Katz and Jonathan Elyachar (collectively, the petitioners), the proponents of an instrument dated July 23, 2008 for probate in the estate of Ralph Elyachar, to produce the following: (1) all documents in their possession, custody or control responsive to Alice’s document demand dated October 30, 2014; (2) HIPAA-compliant authorizations for all of the decedent’s medical providers that “permit her to speak with the decedent’s medical providers”; and (3) Michael Weinberger, Esq., the draftsman of and a witness to the instrument, for an SCPA 1404 (4) deposition, or in the alternative, appointing a physician to examine him and render a report on his mental condition at estate expense.
The petitioners oppose the motion and cross-move for (1) a protective order vacating the SCPA 1404 document demand made by Alice and Dana Elyachar Stahl and (2) an order determining that Alice and Dana do not have standing to continue this proceeding. Alice opposes the cross motion. Dana supports Alice’s motion and opposes the cross motion.
The motion and cross motion are decided as set forth below.
The facts relevant to this motion are as follows:
The decedent and his brother Daniel Elyachar were two principals in the Elyachar family real estate business which is comprised of five corporate entities that own and operate four residential buildings in Manhattan.[1]
In 1952, the decedent married Alice, and they had two daughters, Dana and Jody Elyacha. Jody predeceased the decedent on July 3, 2012, without issue and, at her death, she was married to Richard. Jonathan is Daniel’s son, and he and Richard are executives of these family real estate businesses.
On April 7, 2008, an action was instituted in the Supreme Court, New York County by an Evelyn Nick against Timston, Gerel, Ruradan and the decedent and Daniel individually (the Nick litigation). Ms. Nick had been an employee of the *854 corporate defendants and the causes of action were based on a February 19, 1996 termination agreement and a July 29, 2004 pension agreement. On May 30, 2008, the defendants answered the complaint, generally denying the allegations and asserting six defenses including the fact that Ms. Nick “took wrongful advantage of her relationship of trust and confidence with [the decedent] at times when she knew or had reason to believe that he was suffering from cognitive impairments.”
On July 23, 2008, the decedent executed the instrument and a trust agreement entitled the “Ralph Elyachar 2008 Revocable Declaration of Trust” (the trust). The instrument was drafted by attorney Weinberger and witnessed by him, Barbara Pedersen and Carole Bass. The instrument provided that, should Alice survive him, all of his personalty would go to her and the residuary estate poured into the trust. It nominated as fiduciaries Richard, Jonathan and Paul Scheer, the decedent’s accountant.[2]
The decedent was grantor and trustee of the trust, and on his death, incapacity or resignation, Richard, Jonathan and Paul were to be trustees. By instruments dated December 18, 2008, the decedent resigned as trustee and Richard accepted the position as trustee of the trust. By instrument dated February 10, 2009, Paul accepted his position as trustee of the trust. While not perfectly clear from the record, it appeared that Jonathan accepted his position as trustee on March 5, 2009.
The instrument and the trust contain an in terrorem clause which would act to disinherit any challenge to the instruments made by anyone other than Alice.
Attorney Weinberger drafted other instruments for the decedent including ones dated January 3, 2007 and October 26, 2007, which also poured over into a trust.
By order to show cause signed on January 15, 2009, in the Nick litigation, Alice made an application to the court for the appointment of a guardian ad litem for the decedent. In support of that application, she submitted the affidavit of William Suozzi, M.D. (sworn to on Jan. 3, 2009) which stated that based on his personal knowledge as the decedent’s internist for 20 years and on the decedent’s medical records, the decedent was
“not capable of making informed decisions regarding the conduct of his defense in this litigation. He *855 suffers from cognitive impairments, including memory loss and impaired executive functioning and reasoning ability. He is being treated with medications used for Alzheimer’s disease and may be suffering from that condition, which can only be diagnosed conclusively by autopsy.”
Also submitted in support of that application was the affidavit of Jesse Weinberger, M.D., a neurologist who had examined the decedent twice per year since the year 2005. The decedent was referred to Dr. Weinberger by Dr. Suozzi. Attached to the affidavit were reports made by Dr. Weinberger to Dr. Suozzi, treatment notes and medical records. Dr. Weinberger stated that
“[s]ince I first examined [the decedent] in 2005, his condition has deteriorated. I have prescribed Razadyne and Namenda, two drugs that are used to treat memory loss in patients with Alzheimer’s disease, but his memory is still impaired. He continues to experience episodes of confusion, and, in early 2008, he reported an episode of hallucinations. Most importantly, he exhibits significant loss of executive function consistent with frontal temporal dementia. This means that [the decedent’s] ability to integrate facts and events, his judgment and his decision-making are impaired.”
Richard was proposed by Alice to be the guardian ad litem, and he submitted an affidavit in support of the relief. In his affidavit, Richard stated that the decedent’s mental status in 2004 was an issue in the litigation and that during the period 2004 through mid-February 2008, the decedent’s role in the businesses “diminished to virtually nothing” and that Richard “handled most of [the decedent’s] correspondence and made the day-to-day decisions.” He further stated that “[b]y January 2008, ... it was office policy that [the decedent] was not to sign any checks.”
By decision and order dated August 4, 2009, the Supreme Court in the Nick litigation appointed Richard as guardian ad litem for the decedent to “appear for and protect [the decedent’s] interests in the action.”
The decedent died on April 7, 2014, survived by Alice and Dana. On May 21, 2014, Richard and Jonathan filed a petition for probate of the instrument.
On or about September 15, 2014, Dana served an SCPA 1404 pre-objection document demand on counsel for the petitioners. *856 In response, counsel for petitioners produced 450 documents. On October 13, 2014, Dana provided counsel for the petitioners with a list of three medical providers from whom she sought records regarding the decedent. Counsel for the petitioners state that they submitted the request for these medical records along with HIPAA-compliant authorizations to each provider.
On or about October 30, 2014, Alice’s counsel served an SCPA 1404 pre-objection document demand on counsel for the petitioners. It contained five demands. On November 21, 2014, counsel for the petitioners served a response to the document demand which stated that (1) there were no responsive audio or video tapes in the petitioners’ possession, custody or control; (2) there were no responsive books, calendars, diaries or rolodexes in the petitioners’ possession, custody or control; (3) there were no responsive recordings of the decedent in the petitioners’ possession, custody or control; (4) the demand for corporate documents bearing the decedent’s signature was overbroad, oppressive and unduly burdensome and sought documents outside of the scope of SCPA 1404; and (5) there were no corporate documents limiting, modifying or in any way effecting the decedent’s authority to act on behalf of a corporate entity in the petitioners’ possession, custody or control and that the requests were overbroad, oppressive and unduly burdensome, seeking the onerous production of voluminous documents not relevant to the probate proceeding and beyond the scope of discovery permitted under SCPA 1404.
Alice served a list of 15 medical providers requesting medical records. Counsel for the petitioners allege that they submitted the requests with appropriate authorization, received responses from 12 of the providers and served those responses redacting the records based on the three-year/two-year rule (see 22 NYCRR 207.27).
As set forth above, Alice and Dana now move to compel.
The trial court has broad discretion to supervise and regulate the pretrial discovery process (see Lewis v Hertz Corp., 193 AD2d 470 [1st Dept 1993]; Duracell Intl. v American Employers’ Ins. Co., 187 AD2d 278 [1st Dept 1992]) and to determine what is “ ‘material and necessary’ ” (NBT Bancorp v Fleet/Norstar Fin. Group, 192 AD2d 1032, 1032 [3d Dept 1993]). The court’s determinations will not be disturbed unless there is an abuse of that discretion (see Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker, 1 AD3d 223 [2003], rearg denied 2004 NY App Div Lexis 1942 [1st Dept 2004]).
*857 Discovery pursuant to SCPA 1404 is limited to matters that may provide a basis for objections to probate of the propounded instrument (see Matter of DeWitt, NYLJ, Feb. 5, 1999 at 27 [Sur Ct, Westchester County]). In particular, SCPA 1404 (4) states that any party to the proceeding may examine the attesting witnesses and the person who prepared the instrument, and if it contains an in terrorem clause, the nominated executor and the proponents may also be examined.
The statute also provides that “[t]here shall be made available to the party conducting such examination, all rights granted under article 31 of the civil practice law and rules with respect to document discovery” (SCPA 1404 [4]). The person conducting the SCPA 1404 examination may, pursuant to CPLR 3111, require that the person to be examined produce at the deposition those books, papers and things in her possession or control (3-14 Cox-Arenson-Medina, New York Civil Practice: SCPA ¶ 1404.07; see also CPLR 3120 [a] [1] [i]). Furthermore, if a party fails to properly respond to a request for production, he may, upon motion, be barred from introducing that document at trial in support of his position (see Garzillo v Besdansky, NYLJ, Feb. 7, 2007 at 20, col 1).
Turning to the substantive portion of the motion, the petitioners allege that they do not have any documents in their possession, custody or control responsive to request Nos. 1, 2, 3 and 5. That is all that the statute requires (see CPLR 3120 [a] [1] [i]). As to request No. 4, the court finds that, based on the record on this motion regarding the decedent’s mental condition, some of which is recited above, the responsive documents would be relevant, and therefore, the petitioners shall produce all responsive documents within 30 days of the date of this decision and order. As to request No. 5, while the petitioners state that they have no responsive documents in their possession or control, should Alice file objections, she may seek them during nonparty discovery directly from the corporate entities.
That portion of Alice’s motion which seeks HIPAA-compliant authorizations for all of the decedent’s medical providers that “permit her to speak with the decedent’s medical providers” is denied, without prejudice. While Alice is entitled to documents that these providers generated, she is not entitled to examine them pre-objection.
As to attorney Weinberger, this portion of the motion is denied without prejudice. The record reflects that the motion was not served on attorney Weinberger, attorney Weinberger *858 has not appeared in any way in this proceeding, and petitioners’ counsel does not represent him. Since petitioners’ counsel has stated that they will not voluntarily produce him, counsel for Alice should have a subpoena served on attorney Weinberger. Should attorney Weinberger or an attorney or any other authorized individual move to quash that subpoena on the basis of his incapacity, attorney Weinberger will have placed his mental state in issue, and the matter will be properly before the court for determination (see CPLR 3121; see also Koump v Smith, 25 NY2d 287 [1969]).
The cross motion is denied in its entirety. Alice and Dana each have standing to pursue SCPA 1404 objections (see Matter of Peckolick, 167 Misc 2d 597 [Sur Ct, NY County 1996]). SCPA 1410 requires a party filing objections to an instrument to be adversely affected by its admission. Adverse interest has been construed to mean pecuniary harm (see Matter of Shamroth, NYLJ, Nov. 19, 1998 at 1, col 3). Based on the existence of the trust alone (in that they did not receive their inheritance 100% outright), and that therefore, they would do better in intestacy, Alice and Dana have standing to file objections (see Matter of Hall, 12 AD3d 511 [2d Dept 2004] [son had no standing to contest mother’s will where his interest thereunder was identical to share in intestacy]; Matter of Wang, 5 AD3d 785 [2d Dept 2004] [no meritorious defense to vacate default in probate proceeding where party would have no standing because of receipt of intestate share under instrument]).

. The businesses are Gerel Corp., Hugel Corp., Timston Corp., Ruradan Corp. and Elyachar Properties LLC.

. Paul renounced his appointment as executor on May 8, 2014.